IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 113,220

STATE OF KANSAS,
*Appellee*,

v.

HAI THAT TON,
*Appellant*.

SYLLABUS BY THE COURT

When a defendant affirmatively narrows the scope of a Fourth Amendment claim to an argument that reasonable suspicion did not support a seizure, an appellate court will not consider additional arguments on appeal.

Review of the judgment of the Court of Appeals in an unpublished opinion filed November 18, 2016. Appeal from Johnson District Court; SARA WELCH, judge. Opinion filed July 27, 2018. The judgment of the Court of Appeals affirming the district court is affirmed. The judgment of the district court is affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, argued the cause, and *Candice Alcaraz*, legal intern, was with him on the briefs for appellant.

*Jacob M. Gontesky*, assistant district attorney, argued the cause, and *Steven J. Obermeier,* senior deputy district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt,* attorney general, were with him on the briefs for appellee.

1

The opinion of the court was delivered by

ROSEN, J.: Hai That Ton petitioned for this court's review of the Court of Appeals decision affirming his convictions for possession of marijuana with intent to sell and failure to pay the Kansas drug tax stamp. Because Ton has chosen to narrow the issue in his case only to whether there was reasonable suspicion to support a seizure, we examine that issue alone, see no error below, and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In July 2010, Detective Nick Stein was investigating Kyle Graf for marijuana distribution. A confidential informant told Stein that the marijuana Graf was selling was being shipped from California to the Kansas City metropolitan area by United Parcel Service (UPS) and that Graf had an associate in his distribution enterprise who was an Asian male. Stein had the confidential informant purchase some marijuana from Graf and placed a global positioning system (GPS) tracker on Graf's vehicle. The GPS showed Graf's vehicle parked at 18462 W. 157th Terrace in Olathe (the Olathe house) for 11 minutes on July 9 and again for 10 minutes on July 12. Stein testified that he was suspicious of these stops because, "based on [his] training and experience, short-term traffic . . . can commonly be associated with illegal drug activity, specifically people selling or buying illegal drugs."

Stein searched the water billing records for the Olathe house and discovered that the water account was registered to someone named Amy. Stein also searched the criminal record database for the address and found it listed as the address of an Asian male named John Ton. Ton had a criminal history for assault with a firearm on a person, burglary, grand theft auto, assault with a weapon that was not a firearm, receiving stolen

2

property, and possession of an assault weapon, and he had a sentence enhancement for violating California's gang statute.

Based on the gathered information, Stein suspected that John Ton was the Asian male who was in business with Graf, or possibly Graf's source of supply. Stein contacted UPS inspector Scott Karr and asked him to place a parcel watch on any packages going to the Olathe house. Stein also told Karr that he was specifically looking for packages coming from California.

On July 20, Karr called Stein sometime between 8 and 10 a.m. to inform him that he had a package addressed to Hanna Woodland at the Olathe house. The package was classified "Next Day Air" which meant it was scheduled to be delivered by 10:30 a.m. on July 20. Karr testified that there was nothing unusual about the package and described it as "common-folk standard." Stein then made contact with Officer Andy Falcon, who partnered with a police dog in the execution of his duties. Stein went to the UPS facility where Karr had four or five packages lying on the floor in the hallway. Falcon testified that he arrived with his canine partner around 10:30 a.m. The dog conducted a drug sniff and alerted to the package addressed to the Olathe house. Stein took the package to the police station.

At 3:07 p.m. on the same day, Stein obtained a search warrant to open the package and an anticipatory warrant to search the Olathe house. The anticipatory warrant was conditioned on the package being taken into the house. When the officers opened the package they discovered it contained marijuana. After finding the marijuana, they resealed the package and delivered it to the Olathe house. The delivery occurred after 5 p.m. on July 20.

3

After the officers delivered the package, Ton took it inside the house, and the officers executed the search warrant on the residence. In the basement of the house, they found the UPS package, which still contained the marijuana, and two more boxes of marijuana. The police seized 3,333.4 grams of marijuana from the residence, none of which had a Kansas drug tax stamp. Ton was inside the residence when the police executed the search warrant. After officers read Ton his *Miranda* rights, he agreed to speak to investigators. Ton told the officers he had had marijuana shipped to him, including the marijuana in the intercepted package, and that he sells the marijuana.

The State charged Ton with possession of marijuana with intent to sell and failure to pay the Kansas drug tax stamp. Ton moved to suppress all evidence resulting from the detention of the intercepted UPS package. In the motion, Ton asserted that authorities seized the package in violation of his rights under the Kansas Constitution and the United States Constitution because "[t]here is nothing reported from which either the UPS employee or the Detective could derive any reasonable suspicion, prior to the parcel's detention by the UPS, other than the bare address."

In its response, the State argued the authorities had not violated Ton's constitutional rights because the package was not "seized" for purposes of the Fourth Amendment until after 10:30 a.m., when the scheduled delivery time expired, and by that time the police had probable cause to seize the package. The State also asserted that the six and one-half hour delay of the package that occurred while the officers were waiting for and executing the search warrant was reasonable.

After a suppression hearing, the district court denied Ton's motion. The court concluded that the package was not seized until after 10:30 and that the five-hour seizure was proper at that time because the drug sniff had established probable cause. Ton moved for reconsideration, and the district court again denied his motion. At the hearing on the

4

motion to reconsider, the district judge clarified his earlier order. While the order reflected a finding that the package was not seized until police removed it from the UPS facility after 10:30, the judge informed the parties he meant that there was reasonable suspicion to seize the package.

After a bench trial on stipulated facts, a different judge of the district court convicted Ton of both crimes and sentenced him to 28 months in prison.

Ton appealed, arguing that the district court erred in denying his motion to suppress because the officers did not have the required reasonable suspicion of criminal activity to seize his package out of the mail stream. Ton also argued that the seizure was unreasonable because police detained his package for an unreasonable length of time. The Court of Appeals concluded that the police had reasonable suspicion of criminal activity that justified seizing Ton's package and therefore did not reach the question of whether reasonable suspicion was required or not. *State v. Ton*, No. 113, 220, 2016 WL 6821850, at *3 (Kan. App. 2016) (unpublished opinion). The panel then declined to analyze whether the police had detained the package for an unreasonable length of time because it concluded that Ton was presenting the issue for the first time on appeal. *Ton*, 2016 WL 6821850, at *5. We granted Ton's petition for review.

ANALYSIS

Ton argues the Court of Appeals panel erred when it concluded the police had reasonable suspicion to seize the package and when it declined to consider his argument that the police detained the package for an unreasonable amount of time. He urges us to consider both arguments, conclude that the detention of his package was an unreasonable seizure in violation of the Fourth Amendment, and reverse his convictions.

5

*Reasonable suspicion*

We apply a bifurcated standard to the review of a district court's decision on a motion to suppress. We determine whether the factual findings are supported by substantial competent evidence without reweighing the evidence or assessing the credibility of witnesses. We review the ultimate legal conclusion drawn from these findings de novo. *State v. Patterson*, 304 Kan. 272, 274, 371 P.3d 893 (2016).

The burden to prove the legality of a challenged search or seizure rests on the State. *State v. Cleverly*, 305 Kan. 598, 605, 385 P.3d 512 (2016).

Ton challenges the legal conclusion that the detention of his package was reasonable under the Fourth Amendment. Our review of this conclusion is de novo.

The Fourth Amendment to the United States Constitution prohibits the government from conducting unreasonable searches or seizures of "persons, houses, papers, and effects." Because "[l]etters and other sealed packages are in the general class of effects in which the public at large has a legitimate expectation of privacy," the Fourth Amendment affords them protection. *United States v. Jacobsen*, 466 U.S. 109, 114, 104 S. Ct. 1652, 80 L. Ed. 2d 85 (1984). Generally, when a seizure of property occurs, it is unreasonable unless it is conducted pursuant to a search warrant that is supported by probable cause. *United States v. Place*, 462 U.S. 696, 701, 103 S. Ct. 2637, 77 L. Ed. 2d 110 (1983). That said, some temporary, warrantless detentions of property for investigatory purposes do not violate the Fourth Amendment when they are based on reasonable suspicion of criminal activity. *Illinois v. McArthur*, 531 U.S. 326, 334, 121 S. Ct. 946, 148 L. Ed. 2d 838 (2001) (citing *Place*, 462 U.S. at 706 and *United States v. Van Leeuwen*, 397 U.S. 249, 253, 90 S. Ct. 1029, 25 L. Ed. 2d 282 (1970).

6

We determine what is reasonable "'based on the totality of the circumstances . . . viewed in terms as understood by those versed in the field of law enforcement. . . . [W]e judge the officer's conduct in light of common sense and ordinary human experience'" and defer to the "'trained law enforcement officer's ability to distinguish between innocent and suspicious circumstances. [Citations omitted.]'" *State v. Walker*, 292 Kan. 1, 8, 251 P.3d 618 (2011) (quoting *State v. Thomas*, 291 Kan. 676, 687, 246 P.3d 678 [2011]). But the officer must provide "'at least a minimal level of objective justification . . . . [A]n inchoate and unparticularized suspicion or hunch of criminal activity'" is not sufficient to establish reasonable suspicion. *Walker*, 292 Kan. at 9 (quoting *Thomas*, 291 Kan. at 688).

If the State fails to show that a detention or seizure was lawful, the district court may suppress evidence obtained from the detention or seizure under the exclusionary rule. *State v. Mullen*, 304 Kan. 347, 353, 371 P.3d 905 (2016).

Here, the panel declined to consider whether UPS employees or law enforcement needed reasonable suspicion to take possession of the package. It concluded that this analysis was unnecessary because the government had reasonable suspicion to seize the package, whether it needed it or not. *Ton*, 2016 WL 6821850, at *3. The panel relied on the following reasoning:

> "In this case, Detective Stein was able to point to specific and articulable facts that led him to reasonably suspect Ton was receiving shipments of marijuana through UPS. A confidential informant told Detective Stein that Graf had an Asian male business partner who obtained high-grade marijuana from California. Detective Stein had the CI purchase high-grade marijuana to partially corroborate the information. Law enforcement then placed a GPS tracking device on Graf's car. Graf's car stopped outside 18462 W. 157th Terrace on two different occasions, for a time period between 10 to 15 minutes.

7

Detective Stein testified he was able to reasonably infer from the brief stops at the home that drug sales were occurring.

"Detective Stein then verified that an Asian male, Ton, was connected to 18462 W. 157[th] Terrace. His research of Ton's criminal record revealed Ton had a sentence enhancement due to gang membership in California. Detective Stein stated that gang members are commonly involved in drug sales. Looking at all these facts together, Detective Stein could reasonably infer Ton was having marijuana shipped from California." *Ton*, 2016 WL 6821850, at *4.

We find no error in this analysis. Ton contends that state agents lacked reasonable suspicion to support a seizure because there was nothing unusual about the package's appearance. Ton presented the same argument in the Court of Appeals, and the panel correctly observed that Fourth Amendment caselaw indicates that state agents may base reasonable suspicion on characteristics of the sender or receiver alone. *Ton*, 2016 WL 6821850, at *4. Because Ton offers no authority countering this conclusion, we affirm the panel's decision.

*Preservation of additional argument*

Next, Ton argues that the panel erred when it held he had not preserved his argument that the authorities detained his package for an unreasonable length of time.

We exercise unlimited review over whether a party properly preserved an issue for appellate review. *State v. Daniel*, 307 Kan. 428, 430, 410 P.3d 877 (2018).

Kansas Supreme Court Rule 6.02(a)(5) (2018 Kan. S. Ct. R. 35) provides that, in an appellant's brief, "[e]ach issue must begin with . . . a pinpoint reference to the location in the record on appeal where the issue was raised and ruled on. If the issue was not

8

raised below, there must be an explanation why the issue is properly before the court." In *State v. Godfrey*, 301 Kan. 1041, 350 P.3d 1068 (2015), the appellant argued for the first time on appeal that the State had violated his due process rights. We declined to reach the merits of his claim. *Godfrey*, 301 Kan. at 1042-43.

The Court of Appeals relied on Supreme Court Rule 6.02(a)(5) and *Godfrey* to rule that Ton had not preserved his argument for review because he had not argued in the district court that the officers held his package for an unreasonable length of time. *Ton*, 2016 WL 6821850, at *4-5. Ton asserts that he did not have to present this argument in the district court because Supreme Court Rule 6.02(a)(5) required him to present only his "issue." He asserts that he presented his "issue" when he argued that the warrantless detention of the package was an unreasonable seizure that violated his Fourth Amendment rights. Ton contends that it was the State's burden to prove "the legality of its warrantless seizure in every aspect."

We considered a similar argument in *State v. Estrada-Vital*, 302 Kan. 549, 356 P.3d 1058 (2015). There, officers learned the defendant had a revoked license after finding his wallet during a search of his car. They arrested the defendant, performed a search of his person incident to the arrest, and discovered cocaine in his pocket. The defendant moved to suppress all evidence obtained as a result of the unreasonable search of his vehicle. The district court denied his motion. The defendant argued to the Court of Appeals that the district court should have suppressed the cocaine because the arrest and subsequent search of his person was based on information obtained from an illegal search of his wallet. The Court of Appeals did not consider his contention because it concluded the defendant was making a new argument on appeal.

9

On review, Estrada-Vital argued to this court that he preserved his argument in the district court when he presented sufficient facts to establish a warrantless search. We considered this assertion, noting that

> "[f]or decades, we have required that 'when a defendant challenges the admissibility of evidence on the basis it was obtained by an unlawful search and seizure, the [S]tate has the burden of proving that the search and seizure was lawful.' *State v. Voit*, 207 Kan. 635, 639, 485 P.2d 1306 (1971). That burden is codified in K.S.A. 22-3216(2), which provides that, at a hearing upon a defendant's written motion to suppress evidence, 'the burden of proving that the search and seizure were lawful shall be on the prosecution.'" *Estrada-Vital*, 302 Kan. at 556.

Yet we were wary of the defendant's argument that he had to do no more than "'state facts'" when alleging a Fourth Amendment violation and that it was the State's burden to "refute all possible theories of unlawfulness that might flow from the stated facts." That interpretation of the parties' burdens left it to the district court to "connect the dots between the stated facts in order to intuit the defense's theory of how they constitute a Fourth Amendment violation." *Estrada-Vital*, 302 Kan. at 557.

Ultimately, we passed no judgment on the defendant's argument because the defendant had stipulated in the district court that the police had legal justification for the search of the car, his arrest, and the search of his person, and that there were no additional facts for the court to consider. These comments prevented the district court from making factual findings that supported the defendant's appellate argument and were necessary for appellate review. *Estrada-Vital*, 302 Kan. at 557-59.

Ton has fashioned a nearly identical scenario. In his motion to suppress, he argued that the seizure of his package was illegal because it had to be supported by reasonable suspicion and "[t]here is nothing reported from which either the UPS employee or the

Detective could derive any reasonable suspicion, prior to the parcel's detention by the UPS, other than the bare address." With this assertion, Ton affirmatively narrowed the scope of his argument, resulting in a suppression hearing focused on whether authorities had reasonable suspicion to detain the package. In effect, Ton's arguments directed the district court to make findings and conclusions related only to the presence of reasonable suspicion. As a result, the record on appeal lacks the findings Ton needs to support his argument and the record an appellate court needs to review his claim. For this reason, we uphold the Court of Appeals decision not to address the merits of Ton's argument.

The judgment of the district court is affirmed.