NOT DESIGNATED FOR PUBLICATION

No. 120,960

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ASHLEY PRISCILLA SHINN,
*Appellant*.


MEMORANDUM OPINION

Appeal from Butler District Court; DAVID A. RICKE, judge. Opinion filed March 13, 2020. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Amber R. Norris*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.


Before GARDNER, P.J., BUSER, J., and BURGESS, S.J.


PER CURIAM: Ashley Priscilla Shinn appeals the denial of her motion to suppress evidence obtained in a search incident to arrest. She was a passenger in a stolen pickup truck driven by Dylan Feilmeier. During the vehicle stop, Feilmeier indicated Shinn was the owner of the truck and stated she asked him to help repair the truck. After Shinn identified Feilmeier and herself, she otherwise declined to answer questions. They were both arrested for theft of the truck. In a later search incident to the arrest at the jail, officers discovered a small quantity of methamphetamine in Shinn's bra. Shinn moved to suppress the evidence discovered on her person, arguing that the arresting officer lacked probable cause to arrest her for the theft. The district court denied the motion. In a bench

1

trial on stipulated facts, the district court found Shinn guilty of the drug possession charge but acquitted her on the theft charge. Shinn now appeals the denial of her suppression motion. Finding no error, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

After a traffic stop on February 15, 2018, Butler County Sheriff's deputies arrested Shinn, the passenger in a vehicle reported as stolen, on suspicion of theft of the vehicle. The driver, Feilmeier, was arrested for possession of stolen property as well as for being a habitual violator. A search incident to arrest at the jail revealed a quantity of methamphetamine on Shinn's person. The next day, the State formally charged Shinn with one count of possession of methamphetamine, a severity level 5 drug felony in violation of K.S.A. 2017 Supp. 21-5706(a), (c)(1), and one count of misdemeanor theft in violation of K.S.A. 2017 Supp. 21-5801(a)(4), (b)(4).

On March 27, 2018, Shinn moved to suppress the evidence obtained during the search incident to arrest, arguing that the officers had no probable cause to arrest her after the traffic stop. She asserted Feilmeier's untruthful statement to officers regarding his identity made his additional statements that the vehicle was in Shinn's possession earlier that day unreliable and insufficient to establish probable cause justifying the arrest. The motion further asserted there was no evidence Shinn possessed the stolen truck because she was merely a passenger.

The district court held a hearing on the motion to suppress on April 23, 2018, at which the only witness was the arresting officer, Deputy Thomas Akers. Deputy Akers testified that he initiated the traffic stop after a license plate check revealed the truck was reported stolen. After commanding the driver to exit the vehicle, Deputy Akers saw a second set of hands, suggesting there was a passenger in the vehicle. He secured the driver first by placing him in the patrol car. The driver told Deputy Akers his name was

2

"John Dylan" but another officer on scene identified him as Dylan Feilmeier. Feilmeier told Deputy Akers that he went to the passenger's residence in Wichita to assist with repairs on the truck and identified her as its owner. A search of Feilmeier's person revealed a lanyard around his neck with keys to the stolen truck.

Deputy Akers testified that another officer secured the passenger, who later identified herself to him as Ashley Shinn. Shinn identified Feilmeier by his first name only, but then declined to speak with the deputy further. Deputy Akers further testified on cross-examination that none of the items in the truck could be confirmed as belonging to Shinn. However, Deputy Akers observed several boxes of women's clothing in the cab and bed of the truck before Shinn was taken into custody, which he suspected belonged to Shinn. On redirect, Deputy Akers clarified that Feilmeier explained he owned "a cell phone and a couple other miscellaneous items" in the truck. He could not otherwise confirm that any of the items in the truck belonged to Feilmeier.

The district court denied the motion to suppress, finding that the facts and circumstances showed "a prudent man would have believed that [Shinn] had been and was committing an offense, possession of stolen property. In other words, theft in this case." The court noted Shinn was personally present in a vehicle reported as stolen. Feilmeier had told the officers Shinn had possession of the vehicle earlier in the day and she had asked him to fix something on the vehicle, "which certainly shows that that's consistent with her exercise of dominion over the vehicle." Deputy Akers had observed "women's clothing in the vehicle, which certainly shows some female related use of the vehicle." Finally, Shinn only identified Feilmeier by his first name,

> "which tends to support further suspicion of joint criminal enterprise that she would not fully identify the other person in the vehicle that she was riding in at one o'clock in the morning. There was no alternative explanation or contrary set of known facts that—for the officer to consider at that time, other than what had been placed before him."

After the motion hearing, Shinn waived her right to a jury trial and the case proceeded to a bench trial on stipulated facts. The stipulation of facts presented to the district court provided:

"1.    On February 15, 2018, Deputy Thomas Akers of the Butler County Sheriff's office was traveling behind a red 1986 GMC pickup bearing Kansas registration 875KYR, valued at less than $1,500.00. A check of that registration through dispatch revealed that the vehicle had been reported in Sedgwick County, Kansas as stolen. The vehicle was stopped, and the persons in the vehicle ordered to place their hands outside the windows of the vehicle, which both did without incident. Both were detained; the driver of the vehicle identified himself as 'John Dylan;' a short time later another officer, Sgt. McCluskey of the Augusta Department of Safety, arrived at the scene and identified 'John Dylan' as Dylan Feilmeier. The passenger in the vehicle identified herself as Ashley Shinn, the Defendant in this action.

"2.    Ms. Shinn during questioning told Deputy Akers that the driver's name was 'Dylan' and declined to answer any further questions.

"3.    Dylan Feilmeier had the key to the vehicle on lanyard around his neck, however, the truck was running with no keys in the ignition. The registration paperwork in the glove box indicated that the vehicle belonged to a Mario Diamante. Dylan Feilmeier told law enforcement that he had Uber'd to the Ashley Shinn's location and he identified the truck as belonging to the Ashley Shinn. Ashley Shinn had asked Dylan Feilmeier to fix the truck as it needed some repairs. Defendant Shinn denies the vehicle was at her location, denies asking Feilmeier to repair the vehicle, and denies having control or possession of the vehicle.

"4.    Inside the truck cab were women's underwear and clothes, in the truck bed were a number of items: including an old chainsaw, two toolboxes with miscellaneous tools, an inflatable bed, and other boxes and tubs containing household items, costume jewelry and clothing that appeared to be intended for a woman.

"5.    The Defendant, Ms. Shinn, was arrested for theft of the vehicle; Defendant maintains that arrest was without probable cause. After her arrest, a search incident to that arrest at the jail revealed a quantity of methamphetamine on her person, located in her bra.

4

"6.     A KBI analysis identified the substance found in her bra as methamphetamine.

"7.     These events took place in Butler County, Kansas near 11500 SW 40th Street, Towanda, Kansas.

"8.     Defendant waives her right to a trial by jury and desires this matter proceed to trial to the Court on these stipulated facts.

"9.     Defendant maintains that her arrest was not supported by probable cause, and the discovery of the alleged methamphetamine was preceded by and is the product of an illegal arrest and therefore fruit of the poisonous tree. She continues to object to the admission of that item, and preserves for appeal, by this trial on stipulated facts, her objection to the admission of the item of contraband discovered following her arrest."

Ultimately, the district court found Shinn guilty of the possession of methamphetamine charge, stating the stipulated facts contained sufficient evidence to convict her on that count. The court then acquitted Shinn on the theft charge, noting

"that there would be testimony from Dylan Feilmeier, which is in the Stipulation of Facts, that he had Ubered to the Ashley Shinn location and he identified the truck as belonging to the Ashley Shinn. Ashley Shinn had asked Dylan Feilmeier to fix the truck as it needed some repairs. The keys to the vehicle were present, but on a lanyard around his neck. The truck was apparently running with no keys in the ignition. The Court also notes the addition to the Stipulation, that the defendant Shinn denies the vehicle was at her location, denies asking Feilmeier to repair the vehicle and denies having control or possession of the vehicle. *Court determines that the evidence indicates that there's probable cause that Ms. Shinn was involved in the theft in this case. However, the standard for purposes of trial is a much higher standard, rather one of proof beyond a reasonable doubt.* The Court finds that there is a considerable difference in testimony that is presented through the Stipulation in this case. Dylan Feilmeier, who was the driver of . . . the vehicle that was reported to be stolen, implicates Ms. Shinn. Ms. Shinn denies. The Court has difficult resolving issues of credibility based on the Stipulation of Facts. The Court finds the evidence insufficient to sustain a conviction by proof beyond a reasonable doubt . . . ." (Emphasis added.)

At the sentencing hearing, the district court found Shinn's criminal history score to be an I and imposed a standard term of 11 months in prison, suspended for an 18-month probation term to be served in a drug treatment program.

Shinn timely appealed.

### DID THE DISTRICT COURT ERR IN DENYING THE MOTION TO SUPPRESS?

Shinn argues the district erred by denying her motion to suppress because the officer had no probable cause to arrest her for theft of the truck. In the stipulation of facts for the bench trial, Shinn maintained her objection to the denial of the motion so this issue was properly preserved.

*Standard of review*

This court uses a bifurcated standard of review when reviewing a district court's decision on a motion to suppress. First, without reweighing the evidence, this court reviews the district court's factual findings to determine whether they are supported by substantial competent evidence. Then this court reviews the ultimate legal conclusion using a de novo standard. *State v. Hanke*, 307 Kan. 823, 827, 415 P.3d 966 (2018). However, as the State notes, when the parties do not dispute the material facts, the ultimate question of whether to suppress is a question of law over which an appellate court has unlimited review. 307 Kan. at 827.

The district court convicted Shinn after a bench trial on stipulated facts and the State agrees with the statement of facts as presented in Shinn's brief. The suppression question for this court is one of law. 307 Kan. at 827.

*Analysis*

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures, and warrantless searches are per se unreasonable unless they fall within one of the exceptions to the warrant requirement. *State v. Hubbard*, 309 Kan. 22, 33, 430 P.3d 956 (2018) (citing *State v. Neighbors*, 299 Kan. 234, 239, 328 P.3d 1081 [2014]). The State bears the burden to establish the lawfulness of a search when a motion to suppress evidence has been filed. *Hanke*, 307 Kan. at 827. A search incident to a lawful arrest is one such exception recognized in Kansas. *State v. Mendez*, 275 Kan. 412, 421, 66 P.3d 811 (2003), *overruled in part on other grounds by Neighbors*, 299 Kan. 234.

Kansas statutes authorize a warrantless arrest when a law enforcement officer has probable cause to believe that a person is committing or has committed a felony or, in limited situations, a misdemeanor. K.S.A. 22-2401(c). For a misdemeanor arrest to be lawful under this subsection, the officer must also have "probable cause" to believe that:

"(A)  The person will not be apprehended or evidence of the crime will be irretrievably lost unless the person is immediately arrested;
"(B)  the person may cause injury to self or others or damage to property unless immediately arrested; or
"(C)  the person has intentionally inflicted bodily harm to another person."
K.S.A. 22-2401(c)(2).

Under this statute, a law enforcement officer may also arrest a person if "[a]ny crime, except a traffic infraction or a cigarette or tobacco infraction, has been or is being committed by the person in the officer's view." K.S.A. 22-2401(d).

The Kansas Supreme Court uses the following definition for probable cause:

"'Probable cause is the reasonable belief that a specific crime has been committed and that the defendant committed the crime. Probable cause exists where the facts and circumstances within the arresting officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.

"'When determining whether probable cause exists, an appellate court considers the totality of the circumstances, including all of the information in the officer's possession, fair inferences therefrom, and any other relevant facts, even if they may not be admissible on the issue of guilt.'" *State v. Regelman*, 309 Kan. 52, 61, 430 P.3d 946 (2018) (quoting *State v. Ramirez*, 278 Kan. 402, 406, 100 P.3d 94 [2004]).

In other words, this court looks to the totality of circumstances as viewed through the lens of an objectively reasonable police officer to determine whether probable cause existed to arrest Shinn for theft. See *State v. Keenan*, 304 Kan. 986, 994, 377 P.3d 439 (2016) (citing *Ramirez*, 278 Kan. at 407).

The information available to law enforcement officers at the time of Shinn's arrest is critical. Deputy Akers stopped a red 1986 GMC pickup truck reported known to be stolen. The registration paperwork in the glove box reflected that the vehicle belonged to a Mario Diamante. The deputy detained the driver and another officer detained the passenger without incident. The driver, Feilmeier, provided a false name—that was promptly corrected by another officer—and told Deputy Akers the truck belonged to the female passenger. Feilmeier had a lanyard hanging around his neck with a key to the truck, but the truck was running with no keys in the ignition. Feilmeier said he had taken an Uber to the passenger's location because she wanted him to make some repairs on the truck. Deputy Akers then questioned the passenger, who identified herself as Shinn and provided Feilmeier's first name but refused to answer additional questions. Deputy Akers observed women's clothing in the cab of the truck and the truck bed contained boxes and

tubs containing more women's clothing as well as household items, plus an old chainsaw, two toolboxes with miscellaneous tools, and an inflatable bed.

Shinn asserts these facts did not rise to the level of probable cause required to justify an arrest. Shinn's arguments on this point are basically twofold: (1) that these facts did not establish probable cause to justify the arrest; and (2) that the officer needed particularized probable cause under K.S.A. 22-2401(c)(2) because she was charged with misdemeanor theft.

> *Shinn fails to show the district court erred in concluding the totality of facts support a finding of probable cause.*

Shinn first contends her status as a passenger, plus the fact that Feilmeier had the keys to the truck around his neck, showed she never had possession of the truck or asserted any possessory interest in the truck. She cites no authority for this position. See *State v. Salary*, 309 Kan. 479, 481, 437 P.3d 953 (2019) (failure to support a point with pertinent authority or show why it is sound despite a lack of supporting authority is akin to failing to brief the issue). Similarly, Shinn asserts without authority that the women's clothing seen in the truck "contributed nothing to the probable cause determination" because there was no direct evidence establishing her as its owner. In response, the State contends Shinn's "'standoffish'" behavior and refusal to speak to Deputy Akers, plus Feilmeier's implicating statements that she owned the truck, "was such that the Deputy might be suspicious."

Shinn also challenges the reliability of Feilmeier's statements, asserting he "had incentive to lie and pass the blame for the theft of the truck on Ms. Shinn." The State disputes this assertion by offering that Feilmeier had "several open suspensions[,] was arrested as a habitual violator, [and] does not have a valid driver's license" as an explanation for his dishonesty. The only support Shinn provides for her argument is *State*

9

*v. Landis*, 37 Kan. App. 2d 409, 418-19, 156 P.3d 675 (2007), which dealt with the reliability of an informant's statements used to obtain a search warrant. In *Landis*, the panel determined that statements by a participant to a crime under investigation were not entitled to a presumption of reliability and needed to be independently corroborated to establish probable cause for the search warrant. 37 Kan. App. 2d at 419. Shinn correctly recognizes Feilmeier's statements implicating Shinn cannot be presumed to be reliable. The stipulation of facts here shows that Feilmeier wanted to distance himself from the theft, so Deputy Akers needed additional corroborating evidence to verify Feilmeier's veracity.

That said, Feilmeier's unreliable statements should not be viewed in isolation. Rather, the totality of circumstances before Deputy Akers' decision to arrest Shinn shows that probable cause existed. The fact the truck was stolen is undisputed. That Deputy Akers observed women's clothing in both the cab and bed of the truck is equally undisputed. While Feilmeier implicated Shinn as the truck's owner, his statements were not wholly unreliable. Shinn provided her full name and Feilmeier's first name, but otherwise offered no other statements. Her statements denying ownership included in the stipulation of facts were not known to the arresting officer at the time of the arrest. The registration paperwork found in the truck did not match either of their names. The truck was running without a key in the ignition which would have been visible to Shinn. A reasonable officer could easily conclude that one or both had been involved in the theft. Given the statute criminalizing theft in Kansas encompasses both the act of stealing and possession of stolen property, probable cause existed to arrest both individuals for theft. See K.S.A. 2017 Supp. 21-5801(a).

The district court did not err in denying the suppression motion.

*Shinn's argument concerning particularized probable cause is asserted for the first time on appeal and is not properly before this court.*

For the first time on appeal, Shinn also argues that Deputy Akers lacked particularized probable cause under K.S.A. 22-2401(c)(2), given she was arrested for a misdemeanor offense. Indeed, for a misdemeanor arrest to be lawful where a crime has not been committed in the officer's view, the officer must have "probable cause to believe" that:

> "(A) The person will not be apprehended or evidence of the crime will be irretrievably lost unless the person is immediately arrested;
> "(B) the person may cause injury to self or others or damage to property unless immediately arrested; or
> "(C) the person has intentionally inflicted bodily harm to another person."
> K.S.A. 22-2401(c)(2).

Shinn states that subsections (B) and (C) do not apply in this case. She argues for the first time on appeal there is no evidence that would establish sufficient probable cause to justify an arrest under subsection (A).

This court exercises unlimited review when determining whether a party properly preserved an issue for appellate review. *State v. Daniel*, 307 Kan. 428, 430, 410 P.3d 877 (2018).

Constitutional grounds for reversal asserted for the first time on appeal are not properly before the appellate court for review. 307 Kan. at 430. Nonetheless, Shinn contends her newly asserted claim involves only a question of law arising on proved or admitted facts and is finally determinative of the case. She contends that consideration is necessary to serve the ends of justice or prevent the denial of fundamental rights. Both

are exceptions recognized by Kansas courts that allow review of issues raised for the first time on appeal. *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014).

Supreme Court Rule 6.02(a)(5) (2019 Kan. S. Ct. R. 34) requires an appellant to explain why an issue not raised below should be considered for the first time on appeal. In *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014), the Supreme Court held that litigants who ignore this rule risk a ruling that the issue is improperly briefed, and the issue will be deemed waived or abandoned. The Supreme Court held that Rule 6.02(a)(5) would be strictly enforced. *State v. Godfrey*, 301 Kan. 1041, 1044, 350 P.3d 1068 (2015).

Here, Shinn fails to meet this burden because she fails to explain why she did not raise this newly asserted claim below. Accordingly, this argument is deemed waived or abandoned. *Williams*, 298 Kan. at 1085.

Alternatively, Shinn's newly asserted claim must fail due to an insufficient record based on the stipulation of facts entered into by the parties. Shinn is essentially asserting that by challenging probable cause to initiate the arrest, the State had the burden to establish the legality of that arrest in every respect. The Kansas Supreme Court considered similar arguments in *State v. Estrada-Vital*, 302 Kan. 549, 356 P.3d 1058 (2015), and *State v. Ton*, 308 Kan. 564, 422 P.3d 678 (2018).

In *Estrada-Vital*, the defendant's wallet—which contained a revoked driver's license—was discovered during a search of his vehicle after a traffic stop. Officers arrested him and discovered cocaine in his pocket during a search incident to the arrest. On appeal of his denied motion to suppress the evidence, this court declined to consider his argument that the wallet search was illegal because the defendant raised it for the first time on appeal. *State v. Estrada-Vital*, No. 107,324, 2013 WL 4778150, at *3 (Kan. App. 2013) (unpublished opinion), *rev. granted* 300 Kan. 1105 (2014).

On review of that decision, the Kansas Supreme Court declined to consider the defendant's claim that "the State must refute all possible theories of unlawfulness that might flow from the stated facts" based on the defendant's factual stipulations. 302 Kan. at 557. Along with stipulations about the justification for the traffic stop, the search and seizure of evidence in the vehicle, and the ensuing arrest and search of his person, defense counsel had stipulated "'[t]here [were] no additional facts other than that' for the district court to consider." 302 Kan. at 557.

In *Ton*, a tip from a confidential informant led officers to believe the defendant was distributing marijuana, so the officers contacted UPS to monitor any packages going to his residence. The officers intercepted a package and searched its contents after obtaining a warrant, then discovered marijuana inside. They resealed the package and delivered it to his residence. Another search warrant was executed for the house and Ton was ultimately arrested. Ton later moved to suppress the evidence obtained from the interception of the package, challenging whether the officers had reasonable suspicion to seize the package. After the district court denied his suppression motion, Ton agreed to a bench trial on stipulated facts.

On appeal to this court, Ton challenged the length of the package's detention for the first time. Citing Supreme Court Rule 6.02(a)(5) and the *Williams* and *Godfrey* decisions, the panel declined to consider his new argument and deemed it waived and abandoned. *State v. Ton*, No. 113,220, 2016 WL 6821850, at *4-5 (Kan. App. 2016) (unpublished opinion), *rev. granted* 306 Kan. 1330 (2017).

The Kansas Supreme Court granted Ton's petition for review. Ton challenged the Court of Appeals' determination that he had not preserved the argument. He asserted that challenging the warrantless detention of the package as an unreasonable seizure in the suppression motion required the State "to prove 'the legality of its warrantless seizure in every aspect.'" 308 Kan. at 570. The Kansas Supreme Court characterized Ton's claims as

13

"nearly identical" to those presented in *Estrada-Vital* and upheld the panel's decision, noting:

> "Ton affirmatively narrowed the scope of his argument, resulting in a suppression hearing focused on whether authorities had reasonable suspicion to detain the package. In effect, Ton's arguments directed the district court to make findings and conclusions related only to the presence of reasonable suspicion. As a result, the record on appeal lacks the findings Ton needs to support his argument and the record an appellate court needs to review his claim." *Ton*, 308 Kan. at 571-72.

The present case is similar to the cases cited. In Shinn's motion to suppress, she argued that Deputy Akers lacked probable cause to arrest her for theft based only on Feilmeier's untruthful statements and her status as a passenger. Shinn now asserts that the "facts of the case are undisputed and *there are no new facts not present in the stipulation document at trial.*" (Emphasis added.) As in *Ton*, Shinn's arguments below directed the district court to make findings and conclusions related only to the presence of probable cause as to whether Shinn had committed a crime. There are no other factual stipulations related to Deputy Akers' rationale for immediately arresting Shinn. See 308 Kan. at 571-72. As in *Estrada-Vital*, the presentation of stipulated facts at the bench trial limited the scope of facts that would otherwise be necessary for Shinn's claims to be considered on appeal. See 302 Kan. at 557-59.

Like both cited cases, the stipulation of facts does not allow appellate review of Shinn's newly asserted claim. There are no facts available by which this court can engage in appellate review of probable cause under K.S.A. 22-2401(c)(2). As the party claiming error on appeal, Shinn bears the burden of designating a record sufficient to support her claims. See *State v. Miller*, 308 Kan. 1119, 1157, 427 P.3d 907 (2018) ("The burden is on the party making a claim of error to designate facts in the record to support that claim; without such a record, the claim of error fails."). Shinn's claim fails.

14

Besides the fact that Shinn failed to raise the issue of particularized probable cause at trial and failed to provide a record sufficient for this court to consider the issue on appeal, Shinn's arguments fail on the merits. K.S.A. 22-2401(d) provides that an officer may make an arrest if "any crime, except a traffic infraction or a cigarette or tobacco infraction, has been or is being committed by the person in the officer's view." At the time of arrest, the deputy knew the truck had been stolen and, therefore, the crime of possession of stolen property was being committed in the deputy's view.

Furthermore, there is nothing in the record that shows Deputy Akers knew the value of the truck at the time of arrest. It was the value of the truck that limited the charge of theft to a misdemeanor rather than a felony and that value was determined at a later point in time. There is nothing in the record that anything occurring at the time of arrest would have alerted Deputy Akers that Shinn was involved in only a misdemeanor. There is nothing that would establish the need for making a particularized probable cause finding.

In sum, the district court did not err in concluding that probable cause existed to arrest Shinn for theft. An objectively reasonable officer could conclude based on the totality of the circumstances known at the time of arrest that Shinn had possessed stolen property. Possession of stolen property constitutes theft in Kansas. The officer's arrest of Shinn was lawful. The search of Shinn incident to that arrest was justified and reasonable. Shinn's claim that a particularized finding of probable cause was required was not preserved for appeal and, in any event, was not supported by the record.

Affirmed.

15